[L. A. No. 8856. Department Two.—December 23, 1927.]

E. C. GRIDLEY, as Trustee in Bankruptcy, etc., Appellant,
v. W. N. TILSON, Respondent.

[1] Contracts — Purchase of Corporation Stock — Misrepresentations—Agency—Limitation of Authority.—Where a contract for the purchase of corporation stock provided that the agent of the seller had no power to change, modify, or make any other terms or representations than those contained in the contract and that all other representations were waived, in an action to recover upon promissory notes given for the purchase price, evidence of representations made by the agent which were not contained in the contract were inadmissible.

[2] Id.—Negotiations for Contract—Fraud—Section 1625, Civil Code—Exception.—While the Civil Code, section 1625, provides that a written contract supersedes all negotiations and stipulations concerning the matter between the parties, it has always been the law that fraud in the inducement of a contract may be shown, but there is a well-settled exception in the case where the party seeking to rely on fraudulent representations of an agent had notice of the limitation on the agent's authority to make representations; and therefore a principal is bound only by the representations embodied in the written contract where a provision in the contract notified the prospective purchaser that the agent's authority went no further.

[3] Id.—Failure to Read Contract.—A party signing a contract to purchase corporation stock cannot excuse himself and escape its effects by testifying that he did not have his glasses with him at the time he signed the contract and gave promissory notes for the purchase price, and therefore did not read the contract or a provision thereof limiting the representations of the seller to those contained in the contract, in the absence of a showing that he was prevented by the agent from reading the limiting clause or was otherwise tricked into signing the document without reading it, and he made no request to have the contract read to him.

[4] Id.—Permit to Sell Stock—Exhibiting to Purchaser—Findings.—In an action upon promissory notes given for the purchase price of corporation stock, a finding that a true copy of the

2. Fraud as exception to rule excluding parol evidence to vary written contract generally, note, 17 L. R. A. 272. See, also, 10 Cal. Jur. 937; 12 Cal. Jur. 823; 10 R. C. L. 1056–1058.

3. Failure to read contents as affecting right to relief on ground of fraud, notes, 6 L. R. A. (N. S.) 463; L. R. A. 1917F, 637. See, also, 6 Cal. Jur. 84; 6 R. C. L. 634.

permit was not exhibited and delivered to defendant is unsupported where a copy of the permit was printed on the back of the subscription contract.

[5] ID.—PERMIT FOR CASH SALE—PROMISSORY NOTES FOR PURCHASE PRICE—VIOLATION OF PERMIT.—Where a permit of the commissioner of corporations to sell corporation stock provided that it should be sold at par for cash in lawful money of the United States, the taking of promissory notes for the purchase price is a violation of the permit and the contract is void.

---

(1) 22 **C. J.**, p. 1218, n. 83.    (2) 22 **C. J.**, p. 1215, n. 65, p. 1217, n. 66.    (3) 13 **C. J.**, p. 370, n. 25.    (4) 37 **C. J.**, p. 274, n. 95. (5) 37 **C. J.**, p. 276, n. 35.

APPEAL from a judgment of the Superior Court of Riverside County. William H. Ellis, Judge. Affirmed.

The facts are stated in the opinion of the court.

N. C. Peters for Appellant.

Walter S. Clayson and H. K. Lockwood for Respondent.

SHENK, J.—This is an appeal from a judgment for defendant in an action brought by the Manker Shoe Company, plaintiff's bankrupt, on three promissory notes of the defendant, dated September 19, 1922, the principal sums aggregating $5,000. Defendant's answer admitted the execution and delivery of the notes, but as affirmative defenses alleged that the notes were given for 5,000 shares of the Manker Shoe Company in reliance on certain false and fraudulent statements and representations made by agents of the Manker Shoe Company, and alleged that the contract for the sale of said stock was void in that it was executed contrary to the provisions of the permit issued by the commissioner of corporations. He prayed that the plaintiff take nothing. In a cross-complaint defendant also alleged "that plaintiff . . . agreed to cancel said notes and return them to defendant, but has failed and neglected to do so." He also alleged that "at the time said statements and representations were made and at all times since said date the stock of the Manker Shoe Company has been worthless and without any value whatever. That no stock in said

---

5.   See 6 Cal. Jur. 781; Cal. Jur. 1926 Supp. 479.

company was ever issued to defendant. That defendant has never received any consideration whatever for said promissory notes." While the action was pending Manker Shoe Company was adjudicated a bankrupt and E. C. Gridley, trustee in bankruptcy, was substituted as party plaintiff. At the trial testimony as to the false statements and representations made to defendant by agents of the Manker Shoe Company was admitted over the objection of plaintiff. Plaintiff offered, and there was admitted, in evidence, the contract signed by the defendant, dated September 19, 1922, wherein he subscribed for 5,000 shares of the stock of Manker Shoe Company at $1 each. This subscription contract, among other things, provided: "It is understood and agreed by me that this agreement contains the entire contract between myself and the Manker Shoe Company, Inc. I have read the copy of the permit which is printed on the back of this application. It is understood that no representative has any power to change, modify or make any other terms or representations whatsoever than those herein stated, and that the representative is acting as special agent and all representations not herein set out are by me deemed waived. It is hereby specially agreed that no stock is to be issued until the full amount of this subscription and notes given therefor are paid in full in cash." There was printed on the back of the subscription contract a copy of the permit issued by the state corporation commissioner pursuant to which the stock of the Manker Shoe Company was to be sold for cash at $1 per share. The permit included the following condition: "(b) That a true copy of this permit be exhibited and delivered to each prospective subscriber for, or purchaser of said securities before his subscription therefor shall be taken or any sale thereof made to him." The permit also provided that the company was authorized to sell and issue its shares at par for cash. One of the alleged and proved false representations was that the Manker Shoe Company had obtained a permit to sell the stock at $1.50 a share and that the stock subsequently would be sold for that price. Defendant testified that a few weeks after he signed the contract and gave the notes he went to Mr. Manker, president of the Manker Shoe Company, and told him the circumstances and repeated the statement which the agent had made that the

company had been granted a permit to sell the stock for $1.50 a share; that Mr. Manker stated that there was not a word of truth in it and the agent had no right to make such a statement, and that he would see that Mr. Tilson's notes were returned to him. Mr. Manker then wrote and delivered to defendant the following on the letter-head of the Manker Shoe Company:

"In view of the fact that the notes aggregating five thousand dollars which you gave to Overgaard et al. in favor of the Manker Shoe Company were obtained by evident misrepresentation and in view of the fact that you came to us before any commission was paid and before the notes were returned to us by the salesman and told us of such misrepresentation, I shall see that these notes are returned to you as soon as I can get the salesmen to relinquish their right in the notes and the State Corporation Commission to O. K. same. Trusting this will be satisfactory I am,

"Very truly yours,
"MANKER SHOE COMPANY, INC.,
"C. MANKER, Pres."

The trial court found all of the issues in favor of defendant and rendered judgment accordingly.

[1] It is contended by the plaintiff that the quoted provision of the subscription contract limited the authority of the agents to make only the representations set out in the contract; that the defendant had notice of the limitation and that evidence of any other representations made by the agents should not have been received. This contention must be sustained. [2] While the Civil Code, section 1625, provides that a written contract supersedes all negotiations and stipulations concerning the matter between the parties, it has always been the law that fraud in the inducement of a contract may be shown. A well-settled exception, however, is the case where the party seeking to rely on fraudulent representations of an agent had notice of the limitation on the agent's authority to make representations. Therefore a principal is bound only by the representations embodied in the written contract where a provision in the contract notified the prospective purchaser that the agent's authority went no further. (*Fidelity etc. Co.* v. *Fresno Flume Co.*, 161 Cal. 466 [37 L. R. A. (N. S.) 322, 119 Pac. 646]; *Pease* v. *Fitzgerald*, 31 Cal. App. 727 [161 Pac. 506];

*Tockstein* v. *Pacific Kissel Kar Branch,* 33 Cal. App. 262 [164 Pac. 906]; *Munn* v. *Anthony,* 36 Cal. App. 312 [171 Pac. 1082]; *Schuster* v. *North America Hotel Co.,* 106 Neb. 672 [184 N. W. 136, 186 N. W. 87]; *Northern Assur. Co.* v. *Grand View Building Assn.,* 183 U. S. 308 [46 L. Ed. 213, 22 Sup. Ct. Rep. 33].) In the case of *Pease* v. *Fitzgerald, supra,* the rule was applied under circumstances almost identical with the circumstances in the present case. [3] Defendant, however, attempts to escape the effect of the settled rule of these cases by testifying that he did not have his glasses with him at the time he signed the subscription contract and gave the notes and therefore he did not read the contract nor the provision referred to. But this cannot afford him an excuse in the absence of a showing that he was prevented by the agent from reading the limiting clause or was otherwise tricked into signing the document without reading it. He made no request to have the contract read to him. In addition it was in evidence that he had previously signed similar contracts with the same company in subscribing for 3,000 shares of its stock.

[4] The plaintiff contends that the finding of the court that a true copy of the permit was not exhibited and delivered to defendant is without support in the evidence. There was no issue in the pleadings on this point and as a copy of the permit was printed on the back of the subscription contract the finding of the court appears to be unsupported.

[5] The respondent contends that the agreement for the purchase and sale of the stock was contrary to the authority granted by the permit of the commissioner of corporations and was therefore void under the statute. The provision of the permit relied upon is that which authorized the Manker Shoe Company to sell and issue the stock "at par, for cash, lawful money of the United States." It is accordingly insisted that as promissory notes were issued to represent the purchase price of the stock, this condition of the permit was violated. The defendant relies on the case of *Domenigoni* v. *Imperial Live Stock etc. Co.,* 189 Cal. 467 [209 Pac. 36]. We find no reasonable ground for distinguishing that case in principle from the case at bar. An inspection of the record in that case discloses that the defendant company was authorized by the permit of the commissioner of corporations

"to sell and issue" its capital stock "upon subscription agreements providing for payment of 25 per cent of the subscription price in cash and the execution of promissory notes bearing interest at six per cent by the subscriber for the balance." The defendant company sold to the plaintiff 2,000 shares of its stock and took therefor three promissory notes aggregating seventy-five per cent of the purchase price and a fourth promissory note for the remaining twenty-five per cent. The plaintiff in that action sued to compel the surrender and cancellation of said notes on the ground that the sale was contrary to the permit and therefore void as in violation of the law of the state. This court declared the transaction void, and although the relief sought by plaintiff was denied for the reason that the parties to the contract appeared to be *in pari delicto,* the effect of the litigation was to render the promissory notes worthless in the hands of the defendant company. The plaintiff herein contends that that case is not in point for the reason, so it is claimed, "that the permit in that case was nothing like the one in the case at bar." It is also insisted that the permit here involved does not prevent what is termed an executory contract of sale. It is pointed out that the subscription agreement in the present case provides that "it is hereby specially agreed that no stock is to be issued until the full amount of this subscription and notes given therefor are paid in full in cash." But we find in the Domenigoni case an almost identical provision in the subscription contract, as follows: "It is hereby expressly agreed that no stock is to be issued until the amount of this subscription and note given therefor are paid in full, in cash." We think the facts in the present case are stronger in favor of the defendant herein than were the facts in favor of the plaintiff in the Domenigoni case. In that case a subscription agreement was specifically authorized upon condition that twenty-five per cent of the purchase price be paid in cash. Promissory notes for the balance were also authorized. The promissory notes representing seventy-five per cent were therefore taken in direct conformity with the conditions of the permit. It was the promissory note for the remaining twenty-five per cent that voided the transaction. In the present case no subscription agreements were authorized and no promissory notes were authorized. On the

202 Cal.—48

contrary the whole purchase price was required to be paid in cash. Notwithstanding this requirement of the permit the whole purchase price was represented by promissory notes. If a promissory note for twenty-five per cent was sufficient to avoid the transaction in that case it would follow beyond question that promissory notes for the whole purchase price, when none was permitted, would likewise void this transaction. Furthermore, the contract in that case, in its executory features as to the twenty-five per cent, was the same in effect as the contract in the present case. The finding and conclusion of the trial court that the transaction here involved was void as in violation of the permit and the declared policy of the state was therefore well supported.

Our conclusion of the point just discussed renders it unnecessary to consider the alleged lack of authority of Mr. Manker in his endeavor to bring about a mutual rescission of the contract. Nor is it necessary to discuss other points made.

The judgment is affirmed.

Richards, J., and Langdon, J., concurred.

Hearing in Bank denied.

All the Justices concurred.