[L. A. No. 12823. In Bank.—December 30, 1932.]

VERNA WILBUR SIMMONS, Respondent, v. RATTER-REE LAND COMPANY (a Corporation), Appellant.

Harley E. Riggins and Schweitzer & Hutton for Appellant.

Rollin L. McNitt and Edythe Jacobs for Respondent.

SEAWELL, J. — Plaintiff, Verna Wilbur Simmons, brought this action to rescind a conditional sales contract whereby she agreed to purchase a lot situate in the city of Los Angeles from defendant Ratterree Land Company, a corporation, and to recover the sum of $3,582.37 paid by her on the agreed purchase price of $11,000. As grounds for rescission plaintiff relied on false and fraudulent representations alleged to have been made to her by defendants Grace Gunderson and George D. Lane, as agents for said land company. The court entered judgment against defendant Ratterree Land Company in the amount prayed for, from which said company prosecutes this appeal. Judgment was not entered against the defendant agents for the reason that they had received no part of the price previously paid which plaintiff sought to recover herein.

The contract rescinded is dated March 8, 1928. Plaintiff gave notice of rescission on April 5, 1929, and filed her

complaint herein on April 26, 1929. By the terms of said contract plaintiff was required to pay and did in fact pay $2,750, or one-fourth of the agreed purchase price of $11,000, within three months from the date of the execution of the contract, and thereafter paid $90 a month, as by the terms of said contract provided. The lot, purchased at a price of $11,000, is situate in an outlying district of the city of Los Angeles known as the Westwood district, in a tract subdivided by appellant. Said tract was the fourth to be subdivided and offered for sale by appellant in the immediate vicinity. At the time of plaintiff's purchase it was unsettled and unimproved, save that on certain streets curbs and gravel roadways had been installed. At the time of trial, over two and one-half years later, only one building had been erected in said tract. On March 8, 1928, the date of the contract, construction had been commenced on the buildings of the University of California at Los Angeles on the new site of said university, located about a mile and a half distant from plaintiff's lot, but said university did not move to its new location until September, 1929. The property between defendant's subdivision and the university site, also unsettled, had been purchased by other subdividers in anticipation of the growth and development which was expected with the coming of the university to the district.

Upon this appeal defendant and appellant Ratterree Land Company expressly concedes that the false representations which the court found induced plaintiff's purchase are sufficiently established by the evidence. As grounds for reversal it relies on certain provisions in the contract of sale and in the deposit receipt and agreement signed by plaintiff, which, it is claimed, relieve it from liability for any fraudulent representations made by Mrs. Gunderson and Mr. Lane as its agents. These provisions are to the effect that the buyer has viewed and investigated the property and does not rely on any representations of the seller or its agents except those mentioned in the contract, and that the contract contains all the representations, promises and statements made by the seller or its agents which have induced the buyer to enter into the agreement of purchase.

As authority for the proposition that these provisions relieve it from liability, appellant relies on *Gridley* v. *Tilson,*

202 Cal. 748 [262 Pac. 322, 323]. Respondent contends that the law as announced in said decision does not compel a judgment for appellant on the facts of the instant case. ■ It is settled beyond doubt, manifestly on sound grounds of justice, that a seller cannot escape liability for his own fraud or false representations by the insertion of provisions such as are embodied in the contract of sale herein. (*Hunt* v. *L. M. Field, Inc.*, 202 Cal. 701 [262 Pac. 730]; *Ferguson* v. *Koch*, 204 Cal. 342 [268 Pac. 342, 58 A. L. R. 1176]; *Blackwell* v. *Thomasson*, 84 Cal. App. 784 [258 Pac. 724]; *Long* v. *Los Altos Country Club Properties*, 122 Cal. App. 116 [9 Pac. (2d) 600]; *Palladine* .v. *Imperial Valley etc. Assn.*, 65 Cal. App. 727 [225 Pac. 291]; *Ganley Bros., Inc.*, v. *Butler Bros. Bldg. Co.*, 170 Minn. 373 [212 N. W. 602]; 56 A. L. R. 1, with extensive annotation, 56 A. L. R. 13; also, annotations, 75 A. L. R. 1024, 1032, and 10 A. L. R. 1472.) Section 1668 of the Civil Code provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or wilful injury to the person or property of another, or violation of law, whether wilful or negligent, are against the policy of the law." Fraud in the inducement of a contract vitiates the entire agreement and destroys that consent which is essential to the existence of a valid contract. (Sec. 1856, Code Civ. Proc.)

It is the doctrine of *Gridley* v. *Tilson, supra,* that in certain circumstances the honest principal may protect himself from his agent's fraud by inserting in the contract a provision the effect of which is to inform the purchaser of "the limitation on the agent's authority to make representations not embodied in the written contract". In that case, involving a sale of corporate stock at $1 a share, the agent, with the object of enhancing the value of the stock, represented that the corporation had obtained a permit from the corporation commissioner to sell the stock at $1.50 a share, and that it would be sold subsequently for that price. On the back of the subscription contract which the purchaser signed was a copy of the permit received from the corporation commissioner, from which it appeared that the corporation was authorized to sell at $1 a share. The subscription contract recited that the purchaser had read

the permit on the back of the contract. The plain language of the permit, by reference made a part of the written contract, as well as the provision in the contract limiting the agent's authority, placed the purchaser on notice that the agent was without authority to represent that the corporation was authorized to sell at $1.50 a share, when the only permit exhibited to him was for a sale at $1 a share. Similarly, in *Pease* v. *Fitzgerald*, 31 Cal. App. 727 [161 Pac. 506], also a stock subscription case, cited in *Gridley* v. *Tilson, supra,* the written contract issuing from the principal gave notice that the contract was based ''on the printed literature and printed statements'' of the corporation, and of the agent's want of authority to make representations ''not in accordance therewith''. In *Fidelity etc. Co.* v. *Fresno Flume etc. Co.,* 161 Cal. 466 [119 Pac. 646, 37 L. R. A. (N. S.) 322], where a policy of insurance provided for payment of a certain premium, the insured was not permitted to rely on an oral agreement had between himself and the agent for payment of a different premium.

Before considering the application of the principles discussed above to the facts of the instant case, we wish to comment upon another principle expressly recognized in *Gridley* v. *Tilson, supra.* ▉ Although a purchaser may not offer as a defense against the provisions of a contract that he failed to read it, if his failure to read is due to fraud or trickery of the seller or his agent, the rule is otherwise.

In the case herein, the false representations which induced the sale to plaintiff were made by Mrs. Gunderson and Mr. Lane. Mrs. Gunderson was also employed as a full-time teacher in a Los Angeles public high school, and seems to have conducted her real estate activities as a side line. By stipulation made at the opening of the trial, appellant's counsel relieved plaintiff of the necessity of proving existence of the principal-agency relationship between appellant and Mrs. Gunderson and Lane. While we are not disposed to agree with respondent that the stipulation in question should be construed as an absolute waiver by appellant of any defense it would otherwise have under the terms of the contract, it is nevertheless true that upon the trial appellant relied only half-heartedly on the written contract as an exemption from liability, and did not make

said provisions the crux of its case, as it has done on this appeal.

Plaintiff alleged, and the court found on conflicting evidence, that it was represented to her by defendant corporation that the single lot which she contracted to buy for $11,000 was the last lot zoned for business purposes which remained unsold on Sepulveda Boulevard; that said lot was located in the only district zoned for business between the city of Beverly Hills and the city of Santa Monica, and except for said area the nearest business district to serve those attending the university and families living in the vicinity thereof was in Beverly Hills. It was further represented to plaintiff that the contract for the improvement of Sepulveda Boulevard, upon which her lot fronted, and which was to be a main arterial in the city's traffic system, had already been let, when in fact preliminary steps for said improvement were not taken by the municipal authorities until just before the trial, over two and one-half years later, and that work on a tunnel to connect one end of the boulevard with the San Fernando Valley had already been started, when in fact said work was not started until August, 1929. The representation that the lot was zoned for business purposes was false. In fact, said lot was not zoned for business, but was in Zone B, where single family residences and multiple residence buildings, such as apartments, flats and duplexes are permitted, and not only were there other business districts already in existence, but portions of the tracts of other subdividers contained business zone property much nearer to the university.

In so far as the representations as to the lot being restricted for business purposes are concerned, the contract issued by appellant land company and signed by plaintiff gave notice that said lot was not, as represented by appellant's agents, business property, by express statements therein contained that the deed which plaintiff should receive upon full payment should contain a condition that said property be used for residence purposes only, and that "no lodging house, hotel, bill board or other structure, other than one or more family residences, double bungalows, duplex houses or flat buildings" should be erected thereon, with a provision for forfeiture upon breach. The

doctrine of *Gridley* v. *Tilson, supra,* would preclude plaintiff from relying on representations of the agents, contrary to the express provisions of the written contract, were it not for additional circumstances which operate in plaintiff's favor.

Plaintiff admitted that she read the contract, including the residence restrictions, before signing it, but under the circumstances shown by the record, it appears that by deliberate acts of the selling agents she was prevented from giving a full and fair consideration to the provisions of said written contract, and in legal effect coerced into signing it. By reason of the findings and judgment in favor of plaintiff, the view of the evidence most favorable to her must be adopted. She testified that Mrs. Gunderson called for her late on the afternoon of March 8, 1928. Plaintiff's aged aunt accompanied them in Mrs. Gunderson's automobile. After showing the property and making the false representations found by the court, Mrs. Gunderson drove plaintiff to the land company's office, where Lane, known in real estate parlance as a "closer", joined Mrs. Gunderson in urging the purchase upon plaintiff. Lane emphasized Mrs. Gunderson's selling point that the lot was the only business purpose lot in the tract which remained unsold. The hour approached 9 o'clock and plaintiff and her aged aunt were tired and had eaten no dinner. Lane and Mrs. Gunderson represented that it was necessary for plaintiff to make her decision immediately, as they were momentarily expecting a telephone call from another buyer who desired the lot. As a final inducement Mrs. Gunderson, who had quoted the lot to plaintiff at $11,400, said that in order for plaintiff to obtain the lot for $11,000 she would waive payment of $400 of her commission. Plaintiff signed the memorandum and receipt agreeing to buy the property before leaving the office. There is some uncertainty as to whether or not she also signed the sales contract on said night of March 8, 1928. She herself seems to have been of the impression that she may have signed it on a later date. It bears date March 8, 1928, and a writing is presumed to be truly dated. (Sec. 1963, subd. 23, Code Civ. Proc.) However this may be, she read the contract hurriedly on the night of March 8th, while at appellant's office, with said agents represent-

ing that quick action was necessary to obtain said lot, and in answer to objections which she raised as to the residence restrictions, appellant's agents assured her that it was a standard form used for all lots in the tract, and the lot was nevertheless business property. Said contract contains the following unusual and unjustified provision, typed into the contract, the body of which is printed:

"Buyer's copy of contract to be retained by Seller for Buyer until the sum of Two Thousand Seven Hundred Fifty Dollars ($2,750.00) has been paid on the principal by the Buyer to the Seller." (One-fourth of purchase price.)

A principal who would escape liability for his agent's fraudulent representations on the ground that the provisions of the written contract issuing from the principal afford notice of the falsity thereof, or of the agent's want of authority, cannot succeed where the evidence clearly shows that his agent has unfairly prevented the purchaser from giving a free and full consideration to the contract as written by coercive tactics calculated to destroy the free will and better judgment of an inexperienced person. The situation herein is analogous to the case where the agent by trickery or fraud actually induces the purchaser not to read the contract. In either case there is fraud in the actual execution of the written contract. In *Gridley* v. *Tilson, supra,* the fraud was not in the execution of the contract, but antecedent thereto and in the inducement of the contract.

It may be noted further that although the vice-president and general manager of appellant land company denied any guilty participation or acquiescence in the fraud perpetrated on plaintiff, in view of the fact that several persons testified to have purchased lots in 1926 and 1927 through Mrs. Gunderson and Lane in reliance on false representations and to have become dissatisfied, it seems scarcely possible that it should not have been brought to the notice of the managing officers of appellant that sales persons were selling lots on its behalf who over a period of time continued to indulge in unfair and fraudulent practices. By retaining said agents, the corporation would become a guilty party to the fraud. Guilty participation or acquiescence in the fraud by the managing officers of appel-

lant corporation would be equivalent to such knowledge or participation by the individual seller and principal in so far as liability for the agent's acts and representations is concerned. There is evidence in the record which inferentially would justify the court in finding that the corporation acquiesced in the fraudulent representations.

Although no evidence of actual value of plaintiff's lot was introduced, the price of $11,000 asked by appellant for a single lot in an unimproved and unsettled district is so manifestly exorbitant that said officers must be deemed to have known that said lot would lend itself to sale only to inexperienced persons and with the practice of unfair dealing. Another purchaser testified that she contracted to buy a lot for $10,600. Most of the other purchasers who testified were connected with the public school department of the city of Los Angeles and had reposed confidence in Mrs. Gunderson as a teacher in said schools.

The judgment is fully supported by the evidence and the law.

Judgment affirmed.

Shenk, J., Langdon, J., Tyler, J., *pro tem.*, Preston, J., Curtis, J., and Waste, C. J., concurred.