[Civ. No. 28352. Second Dist., Div. One. Nov. 17, 1965.]

RAY KRONSBERG et al., Plaintiffs and Appellants, v. MILTON J. WERSHOW CO., Defendant and Respondent.

Sax & Grossman and Robert J. Grossman for Plaintiffs and Appellants.

Gendel, Raskoff, Shapiro & Quittner, Frank C. Christl and G. Merle Bergman for Defendant and Respondent.

LILLIE, J.—This is an appeal from a judgment of dismissal following an order granting a motion to strike plaintiffs' fourth amended complaint. Plaintiffs have also attempted to appeal from a nonappealable order denying their motion for reconsideration of the above ruling (*Genis* v. *Krasne*, 47 Cal.2d 241, 249 [302 P.2d 289]) and have additionally argued the merits of their appeal from a formal order dismissing the action as to defendant Wershow individually. It appears, however, that timely notice of appeal from such latter order was not given; on respondents' motion, therefore, the appeal therefrom was dismissed by this court. Thereafter

a remittitur to that effect issued on August 10, 1964, providing that the appeal "from all orders other than that of March 23, 1964, is dismissed," the March 23 order being the judgment dismissing the action in its entirety. Thus, all such other matters having become moot, no consideration will be given to further arguments by plaintiffs with respect thereto.[1]

In April of 1962 the parties entered into a written agreement, supplemented by another writing executed the same day, for the sale at auction by defendant corporation of plaintiffs' property consisting of machinery, other items of personalty and certain parcels of real property. Pursuant thereto, title to the property was conveyed to defendant and an auction was conducted on June 20 of the above year. While various items of personal property were sold, a certain item, referred to in the pleadings as the "air facility," was not sold and, it is alleged, never redelivered to plaintiffs. As for the real property, defendant accepted bids therefor but, according to plaintiffs, never arranged for the consummation of such sales. In view of the above omissions, the gross proceeds of the sale (approximately $21,000) represented but a small fraction of defendant's advances as well as its commissions and expenses ($112,000).

Plaintiffs' first two complaints, to which demurrers were sustained, were in three counts: breach of contract, conversion (of the air facility) and fraud. The demurrer to the first amended complaint having been sustained with leave to amend, a second amended complaint was filed by plaintiffs. A demurrer thereto, both general and special, was again sustained with leave to amend; a motion to strike numerous portions of the pleading was also granted. In allowing plaintiffs 20 days to amend, the trial court filed a seven-page memorandum in support of its rulings. When it sustained a demurrer to the third amended complaint, the court filed a minute order reciting that its written views respecting the deficiencies in plaintiffs' prior pleading were still "largely disregarded." Being of the same view when the fourth amended complaint was filed, specifically, "It does not in fact nor in spirit conform to the previous rulings of the Court," the trial court considered defendants' motion to dismiss as a motion to strike, ordered the pleading stricken and gave plaintiffs 20 days to

[1]Even absent the above remittitur, no consideration would be given by us to the attempted appeal by plaintiffs "from all orders and rulings made and entered which are adverse to them." Such language, even if liberally construed, does not meet the requirement of rule 1, California Rules of Court, that the judgment or the particular part thereof appealed from be "specified."

amend. No such amendment was filed, and defendants' motion to dismiss was thereupon granted.

 Plaintiffs have drafted five different complaints to which either demurrers were sustained or motions to strike granted. If the rulings prior to that relating to the fourth amended complaint were correct, it cannot be doubted that the trial court had jurisdiction to strike such pleading on the ground that it was frivolous and a sham. " 'The fundamental principle running through the cases is that a court is not required to tolerate a purported amended complaint which fails to amend the previous pleading, is not filed in good faith, is filed in disregard of established procedural requirements, or is otherwise violative of orderly judicial administration. . . .' " (*Tostevin* v. *Douglas*, 160 Cal.App.2d 321, 331 [325 P.2d 130].) It is plaintiffs' contention that their third and fourth amended complaints conformed to the ruling on the second amended complaint as to matters specially demurrable;[2] they admit their refusal, however, to conform to "certain major points" or rulings which are stated to be erroneous.

 As to the first count, in all five complaints the agreements assertedly breached are set forth *in haec verba,* being annexed to each pleading as exhibits. In its ruling with respect to the second amended complaint, the trial court observed that "Exhibits A and B constitute the contract between the parties. All contrary allegations in the complaint as to the agreement are superseded by the agreement itself, and are to be disregarded and may be stricken." Cited is *Washer* v. *Bank of America,* 21 Cal.2d 822, 829-830 [136 P.2d 297, 155 A.L.R. 1338] : "The general rule is that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper reference, the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage." Paragraph 11 of the second amended complaint contains the charging allegations in breach of the

---

[2]The validity of this claim may be open to question. Thus, with respect to the first count (breach of contract), the first three complaints asked for compensatory damages for plaintiff Kronsberg in the sum of $3,155,165.60, while only $256,905.96 is demanded therefor in the third and fourth amended complaints. As to plaintiff Abbotwares, the same count of the third amended complaint asked for $10,278,243.49, but in the fourth amended complaint the same damages jump to $31,774,950.67. These ambiguities or conflicts, it appears, have never been explained or clarified. Additionally, there are other ambiguities or uncertainties in the complaint as last amended. These we refrain from discussing at this juncture.

agreement. It is therein alleged that the auction sale took place on June 20, 1962; while some sales were made, defendants failed to account for expenses, receipts and disbursements within 30 days thereafter; also, defendants failed to reconvey the unsold property within 30 days of the sale, or at all. But the supplement to the agreement (Exh. B) specifically provides that "if the proceeds of the sales of the property referred to in the agreement are not sufficient to reimburse me [defendant company] for my advances, expenses, commission and costs, and if the air facility is not sold, I will arrange for sufficient financing on the air facility to cover the amounts that will be owed to me. Such loan will be for at least a period of one year." The present action was filed before the expiration of that period. As the trial court correctly noted, "If the Wershow Company secures a loan upon such property, it can only do so because it holds title. If it holds title, it cannot reconvey it; at least not subject to the loan." Paragraph 4 of the fourth amended complaint contains substantially the same charging allegations despite the defects above pointed out. We thus have an amended complaint which fails, and in fact does not attempt, to remedy the defects in the previous pleading; it is proper, therefore, to strike such pleading from the files on the ground that it "is in all its essential averments but a repetition" of a complaint previously found to be deficient. (*Wilson* v. *Shea,* 194 Cal. 653, 659 [229 P. 945].)

The same is true of the count for conversion wherein the two agreements are repleaded by reference. In its memorandum opinion, the trial court noted that the equipment had been conveyed to the defendants and therefore "plaintiffs are not the owners of and entitled to the possession of such property." Continuing, "If there is a duty to reconvey, then that duty must be predicated upon the satisfaction of the auctioneer's charges as indicated above." Notwithstanding such ruling, plaintiffs' subsequent complaints continue to allege ownership of the personalty as of July 21, 1962, when defendants' "lawful possession" is said to have terminated and plaintiffs' demand for reconveyance was refused.[3] It is settled, of course, that the gist of the right of recovery in an action for conversion is derived from ownership with the

---

[3]The only change in subsequent pleadings (the third and fourth amended complaints) relates to the fair market value of the air facility; in the second amended complaint such value is alleged to be $770,973.42, while its value in the fourth amended complaint is placed at $370,159.17. No explanation is given for this very substantial depreciation.

right of possession, or from actual possession at the time of the alleged tortious act. (*Schweitzer* v. *Bank of America,* 42 Cal.App.2d 536, 544 [109 P.2d 441].) Under the circumstances at bar, plaintiffs can qualify under none of these categories. Defendant company, on the other hand, would have been entitled to maintain an action for conversion against anyone disturbing its possession of the chattels where the right thereto was accompanied by its lien for the payment of money advanced. (*McCaffey Canning Co., Inc.* v. *Bank of America,* 109 Cal.App. 415, 425 [294 P. 45].)

There is still another reason why plaintiffs may not recover on the conversion count. If, as above shown, the trial court correctly determined that the written agreements, having been expressly pleaded, superseded all other agreements to the contrary and barred plaintiffs' recovery under count one, then there has been a misjoinder of such counts since the conversion count likewise pleads the agreements—by reference. A cause of action for damages for breach of contract may not be joined with a tort action for conversion if the misjoinder is challenged by demurrer. (*Beatty* v. *Pacific States S. & L. Co.,* 4 Cal.App.2d 692, 696 [41 P.2d 378].) In their action for conversion, plaintiffs allege that on July 21, 1962, defendant company's lawful possession of the air facility terminated; this directly contradicts the parties' written understanding (Exh. B) that if the air facility was not sold, arrangements for financing on such personalty (to cover defendant's expenses) would be made—"Such loan will be for at least a period of one year." In *Beatty,* the court recognized the rule permitting the pleading of inconsistent causes of action; it determined, however, that such rule was never "intended to sanction the statement in a verified complaint of certain facts as constituting a transaction in one count or cause of action, and in another count or cause of action a statement of contradictory or antagonistic facts as constituting the same transaction." Continuing, "In short, the rule does not permit the pleader to blow both hot and cold in the same complaint on the subject of facts of which he purports to speak with knowledge under oath." (P. 697.) The above view of the law is approved in *Steiner* v. *Rowley,* 35 Cal.2d 713, 719 [221 P.2d 9], as applied to contradictory or antagonistic facts which, we believe, is the situation here.

 The two remaining counts ask damages, compensatory and punitive, for fraud in the inducement of the agreements. Each count alleges an oral representation by Wershow indi-

vidually on April 27, 1964 (the date of the written agreements) that he would personally conduct the auction sale; instead, it is further alleged, said defendant "permitted his employees to conduct substantial portions thereof." Each count also alleges that Wershow on the same date "orally represented to plaintiffs, and defendant corporation represented to plaintiffs in writing, that a loan commitment had been obtained to loan up to $60,000 upon the security of said air facility." Unlike counts one and two, the written agreements are not set out in the pleading. Concededly, however, the oral representations were made on the date the agreements were reduced to writing, and defendant company's above representation "in writing" is to the first of such agreements (Exh. A). That being so, plaintiffs have again fallen into the error of attempting to supersede their written engagements by oral undertakings contrary thereto. Thus, there is nothing in Exhibits A and B which requires that Wershow as an individual will personally conduct the auction, the agreement (Exh. A) providing that "MILTON J. WERSHOW Co., a California corporation (hereinafter referred to as 'WERSHOW') . . . shall within sixty days conduct an auction sale of the property. . . ." With respect to the loan commitment, paragraph 8 of Exhibit A affirmatively states that such commitment to loan the sum set forth was to "a qualified borrower." Plaintiffs rely on the rule that fraud may always be shown by parol even where the written instrument purports to contain the entire agreement between the parties (*Mooney v. Cyriacks*, 185 Cal. 70 [195 P. 922]) as well as the principle that in some cases the breach of contract may be the result of wrongful conduct allowing an alternative remedy in tort. (*Buxbom v. Smith*, 23 Cal.2d 535 [145 P.2d 305].) In our opinion, nevertheless, a distinction must be made between parol promises such as the ones here, which by their very nature are superseded by the final writing inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing but which was the inducing cause thereof. "This rule is based upon the sound principle that a party having agreed in writing to do a certain thing may not stultify his written agreement by claiming that, in fact, he relied upon the other party's oral promise that the terms of the agreement should not be complied with." (*Cobbs v. Cobbs*, 53 Cal.App.2d 780, 785 [128 P.2d 373].)

The above discussion has treated the last amended pleading from the standpoint of its vulnerability to a general demurrer. But the special demurrers were also well taken.

Contrary to the recognized principle (*Tostevin* v. *Douglas, supra,* 160 Cal.App.2d 321, 326-327), no explanation is given, as heretofore pointed out, for the change in values alleged or damages sought which makes the present pleading a rather singular one. Thus, the compensatory damages asked by plaintiff corporation in count four of the third amended complaint are fixed at $10,278,243.49, while in the same count of the fourth amended complaint these damages are alleged to total $31,774,950.67, almost treble the previous (and very substantial) sum. The above variations were called to plaintiffs' attention — all, apparently, to no avail. Accordingly, even if there was merit to plaintiffs' argument that the four counts in question stated four causes of action, "When a special demurrer is well founded the merits of the general demurrer are immaterial. [Citation.]" (*Lamb* v. *Ward,* 101 Cal.App.2d 338, 343 [225 P.2d 317].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.