[No. A065041. First Dist., Div. Two. Feb. 7, 1995.]

RON GREENSPAN VOLKSWAGEN, INC., et al., Plaintiffs and
Appellants, v.
FORD MOTOR LAND DEVELOPMENT CORPORATION et al.,
Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IIIB.

**COUNSEL**

James Duryea, Jr., Robert J. Yorio, James W. Moore, James W. Lucey, David M. Zeff, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Therese M. Stewart and Jerome B. Falk, Jr., for Plaintiffs and Appellants.

John M. Thomas, Morrison & Foerster, Jamie L. Dupree and Andrew E. Monach for Defendants and Respondents.

## Opinion

## HAERLE, J. —

### I. Introduction

This is an appeal from a summary judgment for defendants in a fraud action involving a failed commercial transaction. The primary issue is whether a contract clause which states that the parties relied only on representations contained in the contract establishes, as a matter of law, that a party claiming fraud did not reasonably rely on representations not contained in the contract. We hold that such a per se rule is inconsistent with California law and reverse the summary judgment.

### II. Statement of Facts

#### A. *The Parties*

Appellant, Ronald A. Greenspan (Greenspan) is the sole shareholder of appellant Ron Greenspan Volkswagen, Inc. (RGV) which operated an automobile dealership at 1675 Howard Street in San Francisco until February 1992. The real property at 1675 Howard Street (the Howard Street property) was owned by appellant 1675 Howard Street Associates (HSA) until March 1992. Greenspan is the general partner of HSA.

Appellants' fraud action is against two subsidiaries of Ford Motor Company, Ford Motor Land Development Corporation (Motor Land) and Ford Leasing Development Company (Leasco). At all relevant times, Leasco owned two contiguous parcels of real property located at 1000 Van Ness Avenue and 901 Polk Street in San Francisco (the Van Ness property).

#### B. *Negotiations and Preliminary Agreements*

In March 1990, H.B. Baker Slayback (Slayback), a representative of Ford Motor Company, met with Greenspan and expressed interest in having RGV operate a Lincoln-Mercury dealership at the Howard Street property. Slayback and Greenspan also discussed a related real property transaction which would help Greenspan capitalize and fund the Lincoln-Mercury dealership. The contemplated transaction would be a tax-deferred exchange of real property between Leasco and HSA (the real property exchange). HSA would transfer title of the Howard Street property to Leasco who would then rent it back to RGV at a favorable rate. The Van Ness property would be sold and proceeds would be distributed to appellants to fund the new Lincoln-Mercury dealership.

Although the real property exchange was not reduced to a binding agreement, it became the centerpiece of all subsequent negotiations between the parties. For example, in April 1990, RGV executed an agreement to purchase a Lincoln-Mercury dealership from Ford conditioned on the completion of the real property exchange outlined above. Thereafter, appellants allege, respondents made several false representations to Greenspan relating to the value of the Van Ness property, the results of an appraisal of that property by the San Francisco real estate firm of Cushman & Wakefield, and the existence of potential purchasers of the Van Ness property.

In June 1990, a company named Urban Pacific made an offer to appellants to purchase the Van Ness property from Leasco for $16.3 million. In August 1990 respondents requested that appellants make a counteroffer to Urban Pacific. Appellants contend they were induced by respondents' misrepresentations to submit an $18.2 million counteroffer.

By September 1990, there was no written offer to purchase the Van Ness property. Appellants allege that respondents assured them an offer was forthcoming. In October 1990, RGV became the exclusive Lincoln-Mercury dealer in San Francisco pursuant to an agreement which provided the dealership would terminate if, by December 31, 1991, (1) the real property exchange did not occur or (2) RGV could not meet Lincoln-Mercury's capitalization requirements.

In January 1991, Leasco received a written proposal from Koll Company to purchase the Van Ness property for $18 million.[1] Appellants allege that a representative of Leasco told Greenspan that Leasco had a "special relationship" with Koll, that Koll would "close the deal," and that Koll had a financial partner.

## C. *The 1991 Agreement*

On May 7, 1991, HSA, respondents and Koll entered in a "Purchase and Sale and Exchange Agreement" (the 1991 Agreement). The 1991 Agreement provided that (1) HSA would transfer the Howard Street property to Koll for $17 million, (2) Koll would transfer the Howard Street property to Leasco, (3) Leasco would transfer the Van Ness property to Koll, and (4) Koll would pay Leasco $1 million.

The 1991 Agreement contained the following provision: "11.9 *Sole Agreement*. This Agreement constitutes the sole agreement among the parties, and

---

[1]Koll Company was originally a defendant in this action. After Koll was denied summary judgment, Koll and appellants reached a settlement.

supersedes any and all prior oral or written agreements or understandings among them, pertaining to the transactions contemplated in this Agreement. No express or implied representations, warranties, or inducements have been made by any party to any other party except as set forth in this Agreement."

The 1991 Agreement was conditioned on Koll obtaining, by September 30, 1991, a written commitment for financing from a proposed lender or partner and obtaining city approval for development of a portion of the Van Ness property. On September 30, 1991, Koll terminated the 1991 Agreement on the ground it had not obtained the required financing.

On November 5, 1991, the Lincoln-Mercury dealership agreement between RGV and Ford Motor Company was terminated. RGV ceased operating in February 1992. In March 1992, the bank foreclosed on HSA's mortgage on the Howard Street property.

### D. *Summary Judgment*

The first, fifth and the seventh causes of action charge respondents with fraud (the fraud claims).[2] The fraud claims allege intentional misrepresentations and nondisclosures by respondents with respect to (1) the results of the Cushman and Wakefield appraisal of the Van Ness property, (2) the actual value of the Van Ness property, (3) the existence of potential purchasers and actual offers for the purchase of the Van Ness property, (4) Koll's commitment to participate in the real property exchange, and (5) whether Koll had a financial partner for the real property exchange deal.

On October 27, 1993, the trial court issued its order granting respondents summary judgment on the fraud claims on the ground that "there was no justifiable reliance on the alleged misrepresentations as a matter of law." The court reasoned that the clause in the 1991 Agreement providing that no representations have been made by any party except as set forth in the agreement was "substantially similar" to the contractual provision at issue in *Fisher* v. *Pennsylvania Life Co.* (1977) 69 Cal.App.3d 506 [138 Cal.Rptr. 181] (hereafter *Fisher*). According to the court, *Fisher* establishes that "such language made any reliance on alleged misrepresentations unjustifiable as a matter of law."

---

[2]The trial court granted summary judgment as to the sixth cause of action, for breach of contract, on the ground of the parol evidence rule. Appellants have not appealed this ruling and we therefore do not address it.

## III. Discussion

### A. *Fisher Was Wrongly Decided*

■ Appellants candidly admit that *Fisher* supports the summary judgment with respect to their intentional misrepresentation claims. However, appellants argue that *Fisher* was wrongly decided and should not be followed. Alternatively, appellants contend that, even if *Fisher* is good law, it does not bar fraud claims based on alleged concealment and nondisclosure. We do not address this alternative argument because we agree that *Fisher* was wrongly decided and we decline to follow it.

#### 1. *The Fisher Holding*

In *Fisher*, plaintiff sold two businesses to the defendant insurance company. After defendant breached the purchase agreement, plaintiff threatened to sue. Instead, the parties entered into a settlement agreement which contained a general release of all known and unknown claims against defendant and a purported waiver of plaintiff's rights under section 1542 of the California Civil Code.[3] (*Fisher, supra,* 69 Cal.App.3d at pp. 509-510.) The settlement agreement also stated that plaintiff did not make or enter into the settlement agreement "in reliance upon any warranty or representation by any person or entity whatever except for warranties or representations specifically set forth herein." (*Id.* at p. 510.)

The *Fisher* plaintiff alleged that he entered into the settlement agreement because of defendant's fraud. He claimed to have relied on false representations made during the negotiations leading to execution of the agreement and on fraudulent concealment of material facts. The *Fisher* court held that the plaintiff could not base its fraud claim on alleged intentional misrepresentations: "Plaintiff here relies on cases that hold that, where an agreement is obtained by fraud, it may be rescinded in spite of provisions therein purporting to waive fraud. But those cases are inapposite to this case. Here, plaintiff had agreed that he (and Shrotman) had entered into the 1971 agreement in reliance *only* on the representations set forth in that agreement. Such an agreement amounts to a statement, now binding on plaintiff, that any other representations previously made to him were not material inducements to his execution of the 1971 agreement. Since he thus, in 1971, agreed that he had not relied on the representations on which he now seeks

---

[3]Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (Civ. Code, § 1542.)

recovery, he cannot now claim otherwise. (*Casey* v. *Proctor* (1963) 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579]; *Kronsberg* v. *Milton J. Wershow Co.* (1965) 238 Cal.App.2d 170 [47 Cal.Rptr. 592].)" (*Fisher, supra*, 69 Cal.App.3d at p. 511.)

As discussed below, the analysis quoted above is not supported by the cited authority. Further, this aspect of the *Fisher* decision is inconsistent with California law.[4]

### 2. *Fisher is Not Supported by the Authority Upon Which It Relies*

*Fisher* cites two cases to support its conclusion that a party cannot base its fraud claims on oral representations when there is a clause in the contract providing that all representations are stated therein: *Casey* v. *Proctor, supra*, 59 Cal.2d 97, and *Kronsberg* v. *Milton J. Wershow Co., supra*, 238 Cal.App.2d 170. In fact, neither case supports this proposition.

In *Casey* v. *Proctor, supra*, 59 Cal.2d 97, the court held that plaintiff's personal injury claim (unknown to him at the time he signed a release deriving from his property damage claims) was not barred by a general release because, under Civil Code section 1542, plaintiff could avoid the release even though it specifically included "unknown . . . injuries . . . ." According to the *Casey* court, "Civil Code section 1542 was intended by its drafters to preclude the application of a release to unknown claims in the absence of a showing, *apart from the words of the release* of an intent to include such claims." (59 Cal.2d at p. 109, italics added.) The court held that, under section 1542, the question whether a general release extends to unknown injuries is one of fact to be determined by evidence of intent independent of the actual language in the release.

*Casey* is not directly relevant to *Fisher* because it involved a general release pertaining to tort liability rather that a representations clause in a contract. To the extent the reasoning employed by the *Casey* court can be applied in other contexts, however, it rather clearly does not support the holding in *Fisher*. (See *Aplications Inc.* v. *Hewlett Packard Co.* (S.D.N.Y. 1980) 501 F.Supp. 129, 135, fn. 6.) To the contrary, *Casey* stands for the general proposition that "boilerplate" language in agreements is not always conclusive.

*Kronsberg* v. *Milton J. Wershow Co., supra*, 238 Cal.App.2d 170, the second case relied on by the *Fisher* court, involved the sale of plaintiff's

---

[4]The *Fisher* court went on to find that plaintiff stated a cause of action for fraudulent concealment. Our disagreement with *Fisher* is limited to the holding quoted above and does not extend to the court's fraudulent concealment holding.

property at auction by the defendant corporation. Among other things, plaintiff alleged fraud in the inducement of the auction agreement. (*Id.* at p. 175.) There were two alleged misrepresentations: (1) that the owner of the defendant would personally conduct the auction, and (2) that the defendant would loan up to § 60,000 to a prospective purchaser of plaintiff's property. (*Id.* at p. 176.) According to the *Kronsberg* court, the written agreement provided only that the defendant company would conduct the auction. Further, the offer to loan $60,000 was expressly limited to a qualified borrower.

The *Kronsberg* court rejected the contention that parol evidence was admissible to prove the alleged fraud. The court reasoned that parol evidence is not admissible when the parol promise "by its nature" is superseded by a writing, but only when the promise is not inconsistent with the writing but was the inducing cause thereof. (*Kronsberg* v. *Milton J. Wershow Co., supra,* 238 Cal.App.2d at p. 176.) According to the court, " a party having agreed in writing to do a certain thing may not stultify his written agreement by claiming that, in fact, he relied upon the other party's oral promise that the terms of the agreement should not be complied with." (*Ibid.*)

In contrast to the *Kronsberg* court, the *Fisher* court did not rely on the parol evidence rule to support its holding. Further, *Kronsberg* presented a different factual situation: it involved alleged misrepresentations that directly conflicted with the substantive terms in the contract. *Fisher* involved a standard contract provision which, according to the *Fisher* court, automatically and necessarily limited the parties' fraud liability to false representations actually recorded in the agreement. Neither *Kronsberg* nor *Casey* suggests or supports this limitation.

### 3. *Fisher Is Inconsistent With California Law*

The *Fisher* court ignored a line of California authority holding that a contract provision stating that all representations are contained therein does not bar an action for fraud. (*Simmons* v. *Ratterree Land Co.* (1932) 217 Cal. 201 [17 P.2d 727]; *Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349 [164 P.2d 8]; *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247]; *Buist* v. *C. Dudley DeVelbiss Corp.* (1960) 182 Cal.App.2d 325 [6 Cal.Rptr. 259].)

In *Simmons* v. *Ratterree Land Co., supra,* 217 Cal. 201, the court affirmed a judgment granting rescission to a purchaser of real property on the ground of fraud. The defendant had admitted the misrepresentations but argued it was relieved from liability because of a contract provision stating that

plaintiff had inspected the property and did not rely on any representations of the seller or its agents except those stated in the contract, and that the contract contained all representations by the seller or its agents which induced the buyer to enter into the contract. (*Id.* at p. 203.) Rejecting this argument, the court held: "It is settled beyond doubt, manifestly on sound grounds of justice, that a seller cannot escape liability for his own fraud or false representations by the insertion of provisions such as are embodied in the contract of sale herein. [Citations]." (*Id.* at p. 204.)

In *Herzog* v. *Capital Co.*, *supra*, 27 Cal.2d 349, the court held that a contractual provision that there were no promises, representations, verbal understandings or agreements except those contained in the contract did not insulate a principal from liability for his own fraudulent conduct. (*Id.* at p. 353.) According to the court, "[a] principal under a positive duty to make a disclosure cannot escape liability for failure to do so by relying on a contract provision to the effect that there are no other representations except those contained in the written agreement." (*Id.* at p. 354.)

In *Vai* v. *Bank of America*, *supra*, 56 Cal.2d 329, an agreement dividing the parties' community property contained a provision that it was entered into freely and voluntarily without promises or representations not contained therein. (*Id.* at p. 344.) The court held plaintiff was not estopped by the contract provision from asserting fraud, reasoning that "when the agreement itself is procured by fraud, none of its provisions have any legal or binding effect." (*Ibid.*) According to the court a representations clause is not a "waiver" of the plaintiff's right to sue. (*Ibid.*)

In *Buist* v. *C. Dudley DeVelbiss Corp.*, *supra*, 182 Cal.App.2d 325, this court affirmed a judgment for plaintiff in a fraud action arising out of plaintiff's real property purchase. Defendant argued that a contract provision stating that " '[n]o representations, guarantees or warranties of any kind or character have been made by any party hereto, or their representatives, which are not herein expressed' " established that the alleged misrepresentations were not made. (*Id.* at p. 331.) This court rejected defendant's argument for two reasons. First, "evidence of fraudulent representations inducing the execution of a contract is admissible as an exception to the parole evidence rule." (*Ibid.*) And second, when there is a duty to disclose, the nondisclosing party cannot escape liability by relying on a contract provision limiting the parties' representations to those stated in the contract. (*Ibid.*)

The holding in *Fisher* directly conflicts with the authority discussed above,[5] authority which the *Fisher* court inexplicably ignored.[6] (See also *Palladine* v. *Imperial Valley F. L. Assn.* (1924) 65 Cal.App. 727, 746-747 [225 P. 291], disapproved on other grounds in *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487, fn. 4 [275 P.2d 15]; *Rothstein* v. *Janss Investment Corp.* (1941) 45 Cal.App.2d 64, 67 [113 P.2d 465]; Rest.2d Contracts, § 196; Civil Code, § 1668.) In turn, and rather revealingly, *Fisher* has been ignored by California courts and commentators which continue to embrace the rule that a contract clause like the one at issue in *Fisher* does not bar an action for fraud. (See, e.g., *Danzig* v. *Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128 [208 Cal.Rptr. 336]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 410, pp. 368-369.)[7]

In *Danzig* v. *Jack Grynberg & Associates, supra*, 161 Cal.App.3d 1128, Division One of this district affirmed a judgment granting plaintiffs rescission on the grounds of fraudulent misrepresentation and nondisclosure in connection with plaintiffs' investments as limited partners in defendants' partnership venture. Defendants argued there was insufficient evidence of justifiable reliance or fraudulent inducement based on a provision in the subscription agreement signed by each plaintiff acknowledging that he or she was " 'not acting on the basis of any representation or warranties other than those contained in the . . . Prospectus.' " (*Id.* at p. 1137 & fn. 6.) Rejecting this argument, the court held: "It is well established that a party to

[5]As noted above (fn. 4, *ante*), *Fisher* also held that the contract provisions at issue there did not bar an action for fraudulent concealment. Some of the authority just discussed also so holds (in some instances similarly treating alleged nondisclosure) and, to that extent, *Fisher* is not in conflict.

[6]We are not persuaded by respondents' attempt to distinguish some of these cases, attempts which rely on factual distinctions which had no bearing on the court's holding or analysis. Nor can we accept respondents' suggestion that we adopt a new rule that, under certain circumstances (e.g., when parties are represented by counsel or have some level of business sophistication), a standard representations clause in a contract bars justifiable reliance on certain sorts of alleged misrepresentations, as a matter of law. We think it self-evident that the number and delicacy of the lines that would need to be drawn to implement such a rule would be prohibitive.

[7]Summarizing California law, Witkin states: "A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract, either that no representations have been made, or that any right which might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision. [Citations]." (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 410, pp. 368-369.) Witkin does not even mention *Fisher* in this context.

Indeed, the only reference to *Fisher* that we find in Witkin's texts is in his discussion of the fiduciary relationship between the directors and shareholders of a corporation. (9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 107, p. 606.)

an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement. [Citation]." (*Id.* at p. 1138.)

The *Fisher* holding is also inconsistent with the well-settled rule that parol evidence is admissible to prove fraud in the inducement "even though the contract recites that all conditions and representations are embodied therein." (*Ferguson* v. *Koch* (1928) 204 Cal. 342, 347 [268 P. 342, 58 A.L.R. 1176]; see also, *Mooney* v. *Cyriacks* (1921) 185 Cal. 70, 80-81 [195 P. 922] [contract provision which recites that all conditions and representations are embodied therein will not prevent plaintiff from introducing parol evidence that sale was induced by fraud]; *Morris* v. *Harbor Boat Building Co.* (1952) 112 Cal.App.2d 882, 888 [247 P.2d 589] [" 'it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud . . . even though the contract recites that all conditions and representations are embodied therein' "]; *Oak Industries, Inc.* v. *Foxboro Co.* (S.D.Cal. 1984) 596 F.Supp. 601, 607 [under California law, extrinsic evidence is admissible to prove fraud in the inducement notwithstanding a contract provision that no representations have been made other than those stated in the agreement]; *Aplications Inc.* v. *Hewlett Packard Co.*, *supra*, 501 F.Supp. at p. 134 [under California law, parol evidence is admissible to prove fraud despite contract provision waiving representations not stated in the agreement].) Although the *Fisher* court did not discuss the parol evidence rule, its holding effectively nullifies the rule that parol evidence is admissible to prove fraud by rendering parol promises or representations nonactionable. (Cf. *Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 424 [264 Cal.Rptr. 779].)

The parties have not identified, nor have we found, a single California case which applies the *Fisher* rule. However, the Ninth Circuit recently applied *Fisher* in *In re City Equities Anaheim, Ltd.* (9th Cir. 1994) 22 F.3d 954.[8] The *Anaheim* court affirmed a bankruptcy court's decision to specifically enforce a settlement agreement against a defaulting debtor. The debtor argued, among other things, that the negotiator hired by its creditor to work

---

[8]Another Ninth Circuit case which is arguably relevant is *Brae Transp., Inc.* v. *Coopers & Lybrand* (9th Cir. 1986) 790 F.2d 1439. The *Brae* court stated that, under California law, a release by an acquiring corporation, releasing shareholders of the acquired corporation from all claims as to the corporation's net worth, barred the acquiring corporation's action for fraud. *Brae* is distinguishable because the court there reasoned that the action was barred because the plaintiff admitted in the release *and* in response to a request for admissions made after suit was filed that plaintiff did not rely on any inducements, promises or representations not contained therein. (*Id.* at p. 1445.) We do not address the situation where the plaintiff admitted, after the alleged fraud was discovered, that he did not rely on parol representations.

out the settlement fraudulently induced the debtor to enter into the agreement. (*Id.* at p. 958.) Citing *Fisher*, the court ruled that, even if misrepresentations were made, the debtor could not have reasonably relied on them because the agreement stated that the debtor "expressly and unambiguously admitted that it was not relying on any inducements not contained therein." (*Ibid.*) The court also found that the debtor expressly waived the right to assert any claim against the creditor based on the negotiator's conduct. (*Ibid.*)

*Anaheim* is arguably distinguishable because it involved an attempt to hold a party liable for another party's alleged misrepresentations when there was a specific provision in the contract waiving the right to do so. In any event, to the extent the *Anaheim* court relied on *Fisher*, its analysis is no more persuasive than *Fisher* and is just as inconsistent with California law.[9]

4. *The Contract Clause in the Present Case Does Not Establish That Appellants Reliance on Parol Promises Was Unreasonable as a Matter of Law*

The sole basis for granting respondents summary judgment was that the contract provision renders appellants' reliance unreasonable as a matter of law. The only authority relied on by the trial court to support this proposition was *Fisher, supra,* 69 Cal.App.3d 506. *Fisher* is not binding on this court and, for the reasons set forth above, we decline to follow it.

The provision in the 1991 Agreement stating that no representations were made by the parties except as set forth in the agreement does not preclude appellants from proving fraud. (*Simmons* v. *Ratterree Land Co., supra,* 217 Cal. 201; *Herzog* v. *Capital Co., supra,* 27 Cal.2d 349; *Vai* v. *Bank of America, supra,* 56 Cal.2d 329; *Buist* v. *C. Dudley DeVelbiss Corp., supra,* 182 Cal.App.2d 325; *Danzig* v. *Jack Grynberg & Associates, supra,* 161 Cal.App.3d 1128; 1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 410, pp. 368-369.) Thus, the provision does not establish as a matter of law that any reliance by appellants on misrepresentations not contained in the contract was unreasonable.

---

[9]Other federal courts applying California law have refused to apply the *Fisher* holding. (See *Aplications Inc.* v. *Hewlett Packard Co., supra,* 501 F.Supp. at p. 135, fn. 6; *Oak Industries, Inc.* v. *Foxboro Co., supra,* 596 F.Supp. at p. 609, fn. 2.)

**B.** *Respondents Have Not Established an Absence of Triable Issues Entitling Them to Summary Judgment\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

We reverse the summary judgment as to appellants' first, second, third, fourth, fifth, and seventh causes of action.

Smith, Acting P. J., and Phelan, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 18, 1995.

---

\*See footnote, *ante,* page 985.