**Thomas and Christine HORNE, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**HARLEY–DAVIDSON, INC., Harley–Davidson Motor Company, Inc. and Harley–Davidson Financial Services, Inc., Defendants.**

**Case No. CV 09–04126 DDP (MANx).**

United States District Court, C.D. California.

Sept. 30, 2009.

Allen Wong, Jonathan D. Selbin, Lieff Cabraser Heimann and Bernstein LLP, New York, NY, Kristen E. Law, Lieff Cabraser Heimann and Bernstein LLP, San Francisco, CA, for Plaintiffs.

George F. Langendorf, Arnold & Porter LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[Motion filed on August 10, 2009]

DEAN D. PREGERSON, District Judge.

This matter comes before the court on Defendants' Motion to Dismiss. Defendants argue Plaintiffs' complaint should be dismissed in its entirety without leave to amend. Having heard oral argument and reviewed the papers submitted by the parties, the Court grants in part and denies in part the motion and adopts the following order.

## I. BACKGROUND

### A. Factual History

Thomas and Christine Horne ("Plaintiffs") purchased a 2003 Harley–Davidson motorcycle on July 31, 2002, from an authorized Harley–Davidson dealer. (Compl. ¶ 11.) In conjunction with the purchase of their motorcycle, Plaintiffs purchased an Extended Service Plan ("ESP") from Harley for $1,149.00. (*Id.*)

At the time of purchase, Harley provided to Plaintiffs a document which states in the heading: "Motorcycle Service Contract–Part I–Proof of Registration–Together with the Part II Completes This Motorcycle Service Contract" ("Part I"). (*Id.* ¶ 12 & Ex. D.) Part I contains spaces for the customer to fill in his personal information, and asks the customer to check a box indicating which type of motorcycle she is purchasing (i.e. new, used, or police) and the length of the coverage.

In addition to referencing Part II in the heading, the document states above the signature line:

> The contract plan/term selection determines YOUR coverage. Make sure YOUR Part II matches the contract plan selected.... Furthermore, please acknowledge by signing below that YOU have read and accept the provisions of the contract as a complete statement of YOUR coverage and rights and that YOU are not relying on any writings other than this contract or any other representations or promises.

(*Id.* Ex. D.) The only terms of the ESP contained within Part I concern the effective date of coverage, the type of motorcycle covered, and the cancellation policy. (*Id.* Ex. D.) Part I does not mention at all the cost of repairs under the ESP, or the types of repairs covered.

Mr. Horne signed Part I, although he now asserts that "Harley–Davidson did not

provide, or offer to provide, at the time of purchase a copy of Part II—the document which actually sets forth the terms of the Extended Service Plan—for the Hornes to review." (*Id.*)

Plaintiffs allege that when they purchased the ESP, the Harley dealer told them that should they experience any repair problems that normally are covered under the original standard warranty, they would only have to pay a $50 deductible under the ESP. (*Id.* ¶ 14.) The Harley–Davidson website represents: "Locked-in repair costs. All you'll ever pay is the $50 deductible for covered repairs per visit, not per repair." (*Id.* ¶ 15 & Ex. C.) The website also states, in a note at the bottom of the page, that: "Restrictions apply. See actual contract (Part I and Part II) for specific coverages, exclusions and restrictions." (*Id.* ¶ 16.)

Plaintiffs began experiencing problems with their motorcycle in April 2008, after which they brought it to Harley authorized dealers for testing and repairs on a number of occasions. (Compl. ¶ 23.) In 2008, Plaintiffs took their motorcycle in for repairs and were charged $335 for "diagnostic and tear-down" fees. (*Id.*) Told that the ESP did not cover the diagnostic charges, the Hornes requested from Harley a copy of Parts I and II of the ESP. (*Id.* ¶ 18.) Six months after their first of several requests for Parts I and II, and only after their personal counsel separately requested it on their behalf, Harley sent copies of the documents to the Hornes. (*Id.*)

Plaintiffs assert that by charging more than $50, Harley–Davidson engaged in a "bait and switch" because "what Harley–Davidson promised to the Hornes at the time of sale to induce them to spend $1,149.00 to purchase the Extended Service Plan, it excludes in the fine print of Part II, which was not provided to the

Hornes prior to or at the time of sale." (*Id.* ¶ 21.)

### B. Procedural History

On June 10, 2009, Plaintiffs filed suit on behalf of themselves and all others similarly situated, against Harley–Davidson, Inc., Harley–Davidson Motor Company, Inc., and Harley–Davidson Financial Services, Inc. ("Defendants"). Plaintiffs assert violations of (1) the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("Magnuson–Moss"); (2) the Song–Beverly Consumer Warranty Act, Cal. Civ.Code §§ 1790 *et seq.* ("Song–Beverly"); (3) the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"); and (4) the Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200 *et seq.* and 17500 *et seq.* ("UCL"). In addition, Plaintiffs assert claims for fraudulent inducement, promissory estoppel, unjust enrichment, and violation of California Civil Code § 1710 (deceit). They seek certification of a nationwide class with respect to their causes of action for unjust enrichment and violation of Magnuson–Moss, and a California "sub-class" for the other causes of action.

On August 10, 2009, Defendants filed this Motion to Dismiss. Defendants argue that each of Plaintiffs' claims fail as a matter of law because the ESP contract is an enforceable, final integration that clearly discloses its terms and lawfully excludes coverage of tear-down and diagnostic fees.

### II. LEGAL STANDARD: FED. R. CIV. P. 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twom-*

*bly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). When considering a 12(b)(6) motion to dismiss for failure to state a claim, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir.2000).

A court need not accept as true conclusory allegations or allegations stating a legal conclusion. *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir.1996); *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1940–41, 173 L.Ed.2d 868 (2009) ("mere conclusions[ ] are not entitled to the assumption of truth."). A court properly dismisses a complaint on a Rule 12(b)(6) motion based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). The plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). That is, the plaintiffs' obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 1964–65.

## III. DISCUSSION

### A. First Cause of Action: Violation of Magnuson–Moss

Plaintiffs' Complaint alleges that the ESP is a written warranty as defined by the Magnuson–Moss Act. (Compl. ¶ 70 (citing 15 U.S.C. § 2301(6)).) Plaintiffs assert that by failing to provide them with Part II, which excludes coverage of diagnostic and teardown fees, Defendants violated section 2302(a)'s requirement of full disclosure of warranty terms, section 2302(b)(1)(A)'s requirement that the terms of any warranty be made available prior to

sale, and section 2306(b)'s requirement that a service contract "fully, clearly, and conspicuously" disclose its terms and conditions in simple and readily understood language. (Compl. ¶ 72.) Defendants argue, and Plaintiffs concede, that the ESP is not a warranty under Magnuson–Moss, but rather a "service contract." (Mot. 21:12–3; Opp. 11:13–14.) Plaintiffs propose to amend the Complaint in order to cite section 2306(b)—which governs disclosure obligations for service contracts—instead of section 2302.

■ However, the Court finds that the proposed amendment would be futile because such a claim would be time-barred. Where it is evident from the face of the complaint that the claim is barred by the statute of limitations, dismissal is appropriate. *Hunt v. County of Shasta,* 225 Cal.App.3d 432, 441, 275 Cal.Rptr. 113 (1990). Because Magnuson–Moss contains no express statute of limitations, district courts must look to the most analogous state statute to determine what statute of limitations to apply. *Hillery v. Georgie Boy Mfg., Inc.,* 341 F.Supp.2d 1112, 1114 (D.Ariz.2004). An analogous state statute, the Song–Beverly Consumer Warranty Act, Cal. Civ.Code §§ 1790 *et seq.,* provides a four-year statute of limitations. *Krieger v. Nick Alexander Imports, Inc.,* 234 Cal.App.3d 205, 215, 285 Cal.Rptr. 717 (1991). A cause of action accrues at the moment "when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 806, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005) (citing Cal.Code Civ. Proc. § 312).

■ Here, Plaintiffs allege that on July 31, 2002, they signed Part I of the ESP and that by doing so they acknowledged reading Part II. (Compl. ¶ 12.) However, Plaintiffs' entire Magnuson–Moss claim is premised on not having actually received

Part II at the time they signed the contract. In fact, they allege in their Complaint that Part I "does not set forth the terms of the Extended Service Plan." (*Id.*) Therefore, the elements of their claim were complete and the statute of limitations began to run on the date they signed the ESP, for it would have been readily apparent that Defendants had failed to disclose the terms of the ESP.

■ Plaintiffs argue that the discovery rule, equitable estoppel, and equitable tolling prevent the running of the statute of limitations. The discovery rule provides:

> [A] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.

*McKelvey v. Boeing N. Am.*, 74 Cal. App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999). Equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir.2000) (citations omitted). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations," whereas equitable tolling "may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Id.* at 1176, 1178 (internal quotation marks and citation omitted).

■ Plaintiffs have not pled facts to show that any one of the three doctrines tolls the statute of limitations; to the contrary, the face of the Complaint precludes them all. Neither the discovery rule nor equitable tolling apply because the Plaintiffs, through due diligence, should have discovered any claim arising from Harley's alleged failure to provide Part II when Mr. Horne signed Part I acknowledging having read Part II. (Compl. ¶ 12.) Equitable estoppel does not apply because Plaintiffs have not pled "some active conduct by defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (internal quotation marks and citation omitted) (emphasis in original).

The Court therefore dismisses Plaintiffs' first cause of action without leave to amend, because the proposed amendment would be futile.

### B. Second Cause of Action: Violation of Song–Beverly

■ Like Magnuson–Moss, Song–Beverly requires service contracts to "fully and conspicuously disclose[ ] in simple and readily understood language the terms, conditions, and exclusions of that contract...." Cal. Civ.Code § 1794.4(a). Section 1794.41 specifically requires:

> The contract shall be available for inspection by the buyer prior to the purchase and either the contract, or a brochure which specifically describes the terms, conditions, and exclusions of the contract ... shall be delivered to the buyer at or before the time of purchase of the contract. Within 60 days after the date of purchase, the contract itself shall be delivered to the buyer....

Cal. Civ.Code § 1794.41. The four-year statute of limitations therefore accrued, at

the latest, 60 days after Mr. Horne signed Part I of the ESP. Plaintiffs' invocation of the discovery rule, equitable tolling, and equitable estoppel are equally inapplicable here as they are with respect to the Magnuson–Moss claim, for the reasons set forth above.

The Court therefore dismisses Plaintiffs' Song–Beverly cause of action without leave to amend, as amendment would be futile.

### C. Third Cause of Action: Violation of the CLRA

Plaintiffs' third cause of action alleges Defendants violated the CLRA, Cal. Civ. Code §§ 1750 *et seq.* Specifically, Plaintiffs allege Defendants violated the CLRA's proscriptions against (1) representing that goods or services have uses or characteristics they do not actually have, Cal. Civ.Code § 1770(a)(5); (2) advertising goods or services with the intent not to sell them as advertised, Cal. Civ.Code § 1770(a)(9); (3) representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, Cal. Civ.Code § 1770(a)(14); (4) representing that the subject of the transaction has been supplied in accordance with a previous representation when it has not, Cal. Civ.Code § 1770(a)(16); and (5) inserting an unconscionable provision in the contract, Cal. Civ.Code § 1770(a)(19).

Defendants argue that Plaintiffs' CLRA claims fail for three reasons: (1) the parol evidence rule bars introduction of extrinsic representations directly at variance with terms of the ESP; (2) Defendants' conduct was consistent with the terms of the ESP, which Plaintiffs acknowledged reading, and thus cannot give rise to a claim of deception or unfairness under consumer protection statutes; and (3) Plaintiffs' reliance on alleged misrepresentations that contradict the terms of the ESP is unreasonable as a matter of law.

### 1. *Parol Evidence Doctrine*

In *Wang v. Massey Chevrolet,* 97 Cal.App.4th 856, 870, 118 Cal.Rptr.2d 770 (2002), the court held that "the parol evidence rule does not constitute a defense or bar" to alleged violations of the CLRA. The court reasoned that "[b]y its very language, subdivision (a)(14) of section 1770 contemplates the existence of collateral oral promises, representations or agreements which may be inconsistent with the rights, remedies, or obligations set out in a written contract; the statute makes such misrepresentations unlawful." *Id.* Thus, "the Legislature clearly intended to repudiate any purported bar or defense based on the parol evidence doctrine." *Id.* Therefore, Defendants' argument that the parol evidence doctrine bars Plaintiffs' CLRA cause of action is unavailing.

### 2. *Consistent Conduct with the ESP's Terms*

Second, Defendants argue that because they acted in accordance with the terms of the ESP, which Mr. Horne signed, their conduct cannot give rise to violations of consumer protection statutes predicated on unfair or deceptive practices. (Reply 8:8–10.) However, there is little support for Defendants' argument. Plaintiffs' CLRA claim does not assert that Defendants acted inconsistently with the terms of the ESP; rather, they allege that, among other things, Defendants represented that the ESP involved rights, remedies, or obligations which it does not in fact involve.

Plaintiffs' allegations are factually similar to those found to support a CLRA cause of action in *Massey Chevrolet,* where the Plaintiffs signed a lease contract, but defendants orally misrepresented that the terms had the same effect as a purchase with a loan. 97 Cal.App.4th at 867, 118

Cal.Rptr.2d 770 (reversing trial court's holding that plaintiffs could not state a cause of action under the CLRA "because plaintiffs cannot show that they did not receive all that was promised under the lease"). The fact that Plaintiffs received all that was promised under the ESP does not defeat their cause of action under the CLRA, concerning Defendants' prior or contemporaneous representations regarding the terms of the ESP.

### 3. Justifiable Reliance

■ Finally, Defendants argue that Plaintiffs' CLRA cause of action fails because they could not have reasonably relied on Defendants' alleged misrepresentations that contradict the express terms of the ESP. (Reply 9:14–16.) However, such a per se rule has been rejected by the California courts. In *Massey Chevrolet*, the court concluded:

> "[A] contract clause which states that the parties relied only on representations contained in the contract establishes, as a matter of law, that a party claiming fraud did not reasonably rely on representations not contained in the contract. We hold that such a per se rule is inconsistent with California law and reverse the summary judgment."

97 Cal.App.4th at 872, 118 Cal.Rptr.2d 770 (quoting *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.*, 32 Cal.App.4th 985, 987, 38 Cal.Rptr.2d 783 (1995)). It may be that Plaintiffs' reliance on prior representations made by Harley was unreasonable under the circumstances; but, the Court cannot dismiss Plaintiffs' CLRA claim based on a per se rule that such reliance is unreasonable as a matter of law.

Therefore, the Court denies Defendants' motion with respect to Plaintiffs' cause of action for violations of the CLRA.

### D. Fourth Cause of Action: Deceit and Common Law Fraud

Defendants argue that Plaintiffs' cause of action for deceit and common law fraud fails as a matter of law because the parol evidence rule bars evidence of extrinsic statements that contradict the terms of the ESP. (Reply 4:1–2.) Plaintiffs counter that the "fraud exception" to the parol evidence rule applies. (Opp. 16:5–7.)

■ The parol evidence rule consists of a two-part analysis: "1) was the writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and 2) is the agreement susceptible of the meaning contended for by the party offering the evidence?" *Massey Chevrolet*, 97 Cal. App.4th at 873 (quotation marks and citations omitted). The fraud exception to the parol evidence rule " 'does not apply to such promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.' " *Id.* (quoting *Alling v. Universal Mfg. Corp.*, 5 Cal.App.4th 1412, 1436, 7 Cal.Rptr.2d 718 (1992)). Thus, the fraud exception does not apply where parol evidence "is offered to show a fraudulent promise 'directly at variance with the promise of the writing.' " *Id.* (quoting *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 419, 264 Cal.Rptr. 779 (1989)).

Relying on the parol evidence rule, the court in *Massey Chevrolet* upheld the trial court's decision granting summary judgment to the defendants on the plaintiffs' fraud claim, noting that "[t]he oral representations that [the plaintiffs] could terminate the GMAC lease early without any penalty and pay only $15,213 to purchase

the vehicle appears to be 'directly at variance' with the provisions of the GMAC lease" that the plaintiffs signed. 97 Cal. App.4th at 876, 118 Cal.Rptr.2d 770.

■ In this case, the Court finds that the ESP (including Parts I and II) is a complete integration. Part I contains a standard merger clause and incorporates Part II (and its terms and exclusions) by reference. (Compl. Ex. D.) The prior representations underlying Plaintiffs' fraud and deceit claims are directly at variance with Part II, which clearly provides that diagnostic and tear-down fees are excluded from coverage. (*Id.* Ex. E.)

■ Plaintiffs propose to amend the Complaint in order to allege that they relied on prior written representations contained in a brochure, rather than on oral representations made by the Harley agent who sold them their motorcycle. Such an amendment would be futile, however, because "the parol evidence rule generally prohibits the introduction of any extrinsic evidence, *whether oral or written,* to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera v. Beydoun,* 32 Cal.4th 336, 343, 9 Cal.Rptr.3d 97, 83 P.3d 497 (2004) (emphasis added).

Therefore, the Court grants Defendants' motion with respect to Plaintiffs' fourth cause of action without leave to amend.

### E. Fifth Cause of Action: Violation of the UCL

Plaintiffs' fifth cause of action alleges a number of violations of California's UCL, Cal. Bus. & Prof.Code §§ 17200 & 17500 *et seq.*

Section 17200 of the Business and Professions Code "prohibits unlawful, unfair and fraudulent business practices and unfair, deceptive, untrue and misleading advertising," while Section 17500 "makes it unlawful for any person or entity to induce someone to enter a contract by disseminating untrue or misleading information." *Massey Chevrolet,* 97 Cal.App.4th at 871, 118 Cal.Rptr.2d 770 (internal quotation marks and citation omitted). The unlawful prong of section 17200 "'borrows' violations of other laws and treats them as unlawful practices independently actionable...." *Id.* (citation omitted). The unfair or fraudulent prong of section 17200 does not require proving the elements of a tort; rather "one need only show that members of the public are likely to be deceived." *Id.*

#### 1. Unlawful Practices

Plaintiff alleges Defendants committed unlawful business practices by violating Magnuson–Moss, Song–Beverly, the CLRA, and deceit in violation of Cal. Civil Code §§ 1710 *et seq.* (Compl. ¶¶ 137–38.) Plaintiffs UCL claims premised on Magnuson–Moss and Song–Beverly violations are time-barred for the same reasons outlined above, and the parol evidence rule bars Plaintiffs' UCL claim premised on deceit.

However, for the same reason that the parol evidence rule does not bar Plaintiffs' CLRA claims, neither does it bar Plaintiffs' UCL claims premised on the alleged CLRA violation. *Massey Chevrolet,* 97 Cal.App.4th at 871, 118 Cal.Rptr.2d 770 ("Inasmuch as [the plaintiffs'] claim for violation of section 17200 incorporates the allegations of a violation of Civil Code section 1770, subdivision (a)(14), we conclude that the parol evidence rule does not bar their section 17200 claim....").

#### 2. Unfair or Fraudulent Practices

Plaintiffs allege that Defendants committed unfair or fraudulent business practices by (1) misrepresenting or failing to disclose the exclusion of diagnostic or tear-down fees in the ESP in its advertising,

(compl. ¶ 138); and (2) imposing charges beyond the $50 deductible, (*id.* ¶ 139).

With respect to the first allegation, Defendants argue again that Plaintiffs' reliance on prior representations after signing the ESP is unreasonable as a matter of law. For the same reasons outlined above, the Court rejects the imposition of such a per se rule as being inconsistent with California law. Furthermore, to establish a fraudulent practice under the UCL, Plaintiffs need only show that the representations concerning the terms of the ESP were likely to deceive the public. *Massey Chevrolet,* 97 Cal.App.4th at 871, 118 Cal. Rptr.2d 770. Whether the representations concerning the $50 deductible were likely to mislead the public is a question better suited to resolution on summary judgment.

■ With respect to Plaintiffs' second allegation, however, the Court finds that, as a matter of law, Defendants' actions in collecting fees in accordance with the terms of the ESP cannot give rise to a claim of unfair or deceptive business practices under the UCL.

### 3. *Unfair, Deceptive, Untrue and/or Misleading Advertising*

■ Finally, Plaintiffs assert that Defendants violated the UCL by stating "in its marketing, advertising, and other broadly disseminated representations that the Extended Service Plan had a $50 Deductible when, in fact, as provided by Part II and administered by Harley–Davidson, it does not." (Compl. ¶ 140.) The Court finds that whether Harley–Davidson's advertising was likely to mislead the public is a question better suited for resolution on a motion for summary judgment.

Therefore, the Court grants in part and denies in part Defendants' motion with respect to Plaintiffs' fifth cause of action. With respect to unlawful business practices, Plaintiffs have failed to state a claim

for UCL violations premised on violations of Magnuson–Moss, Song–Beverly, and deceit. However, Plaintiffs have stated a claim for unlawful business practices in violation of the UCL premised on the alleged CLRA violations. With respect to unfair or fraudulent business practices, Plaintiffs have stated a claim with respect to Defendants' alleged misrepresentations, but not with respect to Defendants' actions in collecting service fees in excess of $50. Finally, Plaintiffs have stated a claim for a UCL violation based on advertisements likely to deceive the public.

### F. Sixth Cause of Action: Fraudulent Inducement

■ For the reasons outlined above, Plaintiffs' claim for fraudulent inducement is barred by the parol evidence rule. The fraud exception to the parol evidence rule only applies where the plaintiff is induced to enter into a contract based on promises that are "independent of or consistent with the written instrument," not when the prior representations are "directly at variance with the promise of the writing." *Massey Chevrolet,* 97 Cal.App.4th at 873, 118 Cal.Rptr.2d 770 (internal quotation marks and citation omitted). Defendants' alleged representations that Plaintiffs' would only ever need to pay a $50 deductible per visit for repairs is directly at variance with the express terms of the ESP. Therefore, Plaintiffs' claim for fraudulent inducement fails as a matter of law. The Court dismisses Plaintiffs' sixth cause of action without leave to amend.

### G. Seventh Cause of Action: Promissory Estoppel

■ Promissory estoppel is a doctrine that operates as a substitute for consideration where a contract fails. The purpose of the doctrine of promissory estoppel "is to make a promise binding, un-

der certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." *Youngman v. Nev. Irr. Dist.*, 70 Cal.2d 240, 249, 74 Cal.Rptr. 398, 449 P.2d 462 (1969). Thus, when "the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Id.*

■ In this case, Plaintiffs cannot state a cause of action for promissory estoppel because a valid contract, supported by consideration, governs the same subject matter as the alleged promise. *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) ("In sum, either KFC was in breach of contract or it was not. That should be the end of the matter. Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract.")

The Court therefore dismisses Plaintiffs' promissory estoppel cause of action without leave to amend.

### H. Eighth Cause of Action: Unjust Enrichment

■ Finally, Plaintiffs' cause of action for unjust enrichment fails as a matter of law. The parties dispute whether unjust enrichment is an independent cause of action under California law, or merely a theory of recovery. (*See* Opp. 34.) The Court finds it unnecessary to resolve the question because as a matter of law, Defendants were not unjustly enriched by collecting fees in accordance with a valid, enforceable contract. *See, e.g., Cal. Med. Ass'n, Inc. v. Aetna U.S.*, 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights.") (citations

omitted); *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App.4th 194, 203, 51 Cal.Rptr.2d 622 (1996) ("Finally, as to the Insured's claim of unjust enrichment resulting in an implied-in-fact contract, it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.")

The Court therefore dismisses Plaintiffs' unjust enrichment cause of action without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion with respect to Plaintiffs' first, second, fourth, sixth, seventh, and eighth causes of action. The Court denies Defendants' motion with respect to Plaintiffs' third cause of action. The Court grants in part and denies in part Defendants' motion with respect to Plaintiffs' fifth cause of action.

IT IS SO ORDERED.